## STATE OF INDIANA, EX REL. HAM *v.* HULLEY, MAYOR, ET AL.

[No. 23,979. Filed December 7, 1922.]

1. MUNICIPAL CORPORATIONS.— *Contracts of Hire.— Breach by City.—Remedy.*—If a policeman was merely an employe of a city, his remedy for wrongful dismissal was an action for breach of his contract of employment, and not mandamus to compel the payment of his salary as a police officer for the time intervening between his discharge and reinstatement. p. 550.

2. MUNICIPAL CORPORATIONS.— *Contracts of Hire.— Breach by City.—Measure of Damages.*—In an action against a city for breach of his contract of employment by an employe wrongfully discharged, the measure of damages is the amount in which his earnings and income in other occupations fell short of the salary he should have received as a city employe. p. 550.

3. MUNICIPAL CORPORATIONS. — *Officers. — Wrongful Exclusion from Office.—Recovery of Salary Paid to De Facto Officer.*— Where a *de facto* officer of a municipal corporation has received from the proper disbursing officers in regular course the salary attached to the office held by him for the time he occupied such office and performed the duties thereof, the municipal corporation is not thereafter liable to the *de jure* officer for such salary, though he may obtain possession of the office and show that he has been kept out of it by wrongful acts of other officers of the municipality. p. 551.

4. MUNICIPAL CORPORATIONS.—*Wrongful Discharge of Police Officers.— Reinstatement.— Recovery of Salary.—* Where a city police officer was wrongfully discharged and subsequently reinstated, he could not, in an action of mandamus, compel the city to pay him the salary he would have received for the time he was wrongfully prevented from performing his duties on the theory that he was a public officer excluded from his office, such salary having been paid to another acting as policeman in his place. p. 551.

From Grant Circuit Court; *J. F. Charles,* Judge.

Action by the State of Indiana, on the relation of Avery G. Ham, against Elkanah Hulley, mayor of the city of Marion, and others. From a judgment for defendants, the relator appeals. *Affirmed.*

*Frank O. Switzer, Walter Bent* and *John A. Kersey,* for appellant.

*Marshall Williams* and *Gus S. Condo,* for appellees.

EWBANK, J.—Appellant's relator brought an action of mandamus against the eight appellees, alleged to be the mayor and common council of the city of Marion, Indiana, asking that the defendants (appellees) be required "to pay the relator his salary" as a patrolman of said city from July 15, 1914, to August 15, 1918, a period of four years and one month. Neither the city of Marion as a corporation nor any of its officers other than the mayor and councilmen was made a party to the action. A demurrer to the complaint was overruled, and demurrers to each of the third, fourth, fifth, sixth and eighth paragraphs of answer were sustained, to each of which rulings appellee excepted, and has assigned them as cross-errors. Issues of fact were formed by an answer in denial of the complaint, and a reply in denial of the second and seventh paragraphs of answer. On proper request the court made a special finding of facts, and stated four conclusions of law thereon, to the general effect that appellant (the plaintiff) was not entitled to recover anything, and must pay the costs. Appellant excepted to each conclusion of law, and the assignment of errors presents them for review.

Of the facts alleged in the complaint and affirmative paragraphs of answer, the court found the following, among others: On July 15, 1914, the relator was a patrolman of the city of Marion, serving under an appointment by the board of metropolitan police commissioners; that he received no salary as patrolman from July 15, 1914, to August 15, 1918, and the salary of a patrolman for that time at the established rate would be $3,892.50. In June, 1914, the members of said board, being city officers other than the appellees or their

predecessors in the offices of mayor and councilmen, made an unlawful attempt to dismiss relator from his office of patrolman, and thereafter during said period of four years and one month, prevented him from performing his duties as a patrolman and appointed other persons to the offices of relator and certain other patrolmen who were thus unlawfully dismissed, and the salaries of relator and his fellow patrolmen unlawfully dismissed were paid to and received by the other persons so appointed, and all the funds appropriated for the maintenance of the police department of Marion were expended in paying persons, other than relator, for performing, and who did perform, all the duties of the various offices of the police department, including the duties of the relator. During all the time he was so excluded from said office the relator was a resident of Marion, in good health, of sound mind and good moral character, able to speak and write the English language, and ready, able and willing to perform all the duties of a policeman therein. The city of Marion, by appropriations of money to pay attorneys and costs, and otherwise, took an active part in defending an action which appellant and three others of the unlawfully dismissed patrolmen brought against the said members of the board of metropolitan police commissioners by whom they were dismissed, and in said action, to which neither the city as a municipal corporation, the mayor or councilmen then in office, nor any of the appellees in any capacity, is shown to have been a party, but which the city and its officers prolonged by appropriations of money and otherwise, appellant and the other dismissed patrolmen, on June 8, 1916, recovered a judgment of mandamus, commanding the members of said board to reinstate them in their offices on the police force as of the date of their dismissal, and upon an appeal to the Supreme Court, that judgment was affirmed on June 4,

1918, and in obedience to said judgment the said board on August 15, 1918, set aside its order of dismissal and reinstated appellant and the other dismissed police officers as of the date of their dismissal.

The population of Marion was 19,359 inhabitants and in each of the years 1914 to 1918, inclusive, the common council appropriated for the salaries of the metropolitan police force and persons performing such services more than $20,000, all of which was paid out and disbursed by the disbursing officers of Marion to persons performing the duties of patrolmen in said city, serving under appointment as such by the police board of the city, upon pay rolls certified to the city clerk by the chief of police of said city, on none of which payrolls did the name of appellant appear; and all of such payments were made by said clerk as disbursing officer in good faith, and under the belief that the person to whom the salary claimed by appellant was paid had the right to receive it. Demand was made before suit. No fraud on the part of the city or of these appellees was found.

But while it appears that appellant was prevented from serving as a patrolman, the finding does not state what was his occupation, if any, nor what income, if any, he derived from work done in time which would have been devoted to serving on the police force, except for his unlawful dismissal.

A paragraph of answer alleged that he was employed and engaged in the performance of services for others than the city during the period for which he was demanding a salary, and thereby earned and received $4,000 as compensation. But a demurrer was sustained to that answer, and no facts were found tending to show whether or not appellant's earnings were less during the period of his dismissal than the salary of a patrolman. Many questions of law are discussed by counsel in their briefs, but we shall consider

only one.  If appellant was merely an employe of the city it is obvious that his remedy would be an action against the city for breach of his contract of employment, and the measure of his damages for wrongful dismissal would be the amount in which his earnings and income in other occupations fell short of the salary he should have received as patrolman.  See *City of Cleveland* v. *Luttner* (1915), 92 Ohio St. 493, 111 N. E. 280, Ann. Cas. 1917D 1134.

But appellant insists that his relation to the city was that of a public officer, and that his rights are those of an officer wrongfully excluded from his office.

3, 4.  The great weight of authority is to the effect that, where a *de facto* officer of a municipal corporation has received from the proper disbursing officers in regular course the salary attached to the office held by him for the time he occupied such office and performed the duties thereof, the municipal corporation is not thereafter liable to the *de jure* officer for such salary, though he may obtain possession of the office and show that he has been kept out of it by wrongful acts of other officers of the municipality.  *City of Terre Haute* v. *Burns* (1917), 69 Ind. App. 7, 116 N. E. 604; *Id.,* 70 Ind. App. 712, 117 N. E. 519, and authorities cited; *Thompson* v. *Denver* (1916), 61 Colo. 470, 158 Pac. 309, Ann. Cas. 1918B 915; *Samuels* v. *Town of Harrington* (1906), 43 Wash. 603, 86 Pac. 1071, 117 Am. St. 1075; *People, ex rel.,* v. *Burdett* (1918), 283 Ill. 124, 118 N. E. 1009, overruling *People* v. *Coffin* (1917), 279 Ill. 401, 117 N. E. 85; *People* v. *Schmidt* (1917), 281 Ill. 211, 117 N. E. 1037, L. R. A. 1918C 370.

This doctrine, as declared by the Appellate Court of Indiana in the case first cited, was approved by the Supreme Court upon denying a petition for the transfer of that case, and we see no reason to depart from it. Applied to the facts found in this case, upon the assump-

tion that appellant has the rights of a public officer temporarily excluded from his office, it necessarily leads to the conclusions stated by the trial court upon its finding, that appellant was not entitled to recover as against appellees, and was liable for the costs, whatever might be the decision of the other questions of law discussed by counsel.

The judgment is affirmed.