(No. 28224.—

CATHERINE L. D. CORBETT *et al.*, Appellees, *vs.* THE CITY OF CHICAGO, Appellant.

*Opinion filed September 19, 1945.*

BARNET HODES, Corporation Counsel, (J. HERZL SEGAL, and L. LOUIS KARTON, of counsel,) all of Chicago, for appellant.

MICHAEL F. RYAN, of Chicago, for appellees.

Mr. JUSTICE FULTON delivered the opinion of the court:

Catherine L. D. Corbett *et al.*, appellees herein and plaintiffs in the lower court, brought suit in the circuit

court of Cook county to recover from the defendant, the city of Chicago, salaries claimed to be due them during the period from February 24, 1941, to July 1, 1942. The circuit court sustained a motion to strike the amended answer of the city of Chicago and entered judgment in favor of each of the plaintiffs for $1623.33. The defendant appealed from the said judgment to the Appellate Court for the First District where the decision of the trial court was affirmed. The appellees allege that they had been wrongfully refused certification and appointment as telephone operators (police clerks—female) in the classified service of the city of Chicago, a civil service position. They instituted *mandamus* proceedings to compel their certification and appointment to such positions, and on February 24, 1941, a judgment order for the issuance of the writ of *mandamus* was entered, from which judgment the city of Chicago appealed. Said judgment was affirmed in *People ex rel. Corbett* v. *Allman,* 312 Ill. App. 484. On June 10, 1942, this court denied a petition for leave to appeal. Thereafter, on July 1, 1942, the appellees herein were employed by the city of Chicago in pursuance of the original judgment in the *mandamus* proceeding. This action is one to recover for the salaries from the period beginning February 24, 1941, the date of the judgment in the *mandamus* case in the circuit court, to July 1, 1942, the date when, after the denial of the petition for leave to appeal, the plaintiffs herein were employed. The record is before us on leave to appeal granted.

The contention of appellant is that the payment by a city of salaries to *de facto* employees constitutes a complete defense to the claim of appellees for salaries during the time that the positions were occupied by such *de facto* employees, and, as sustaining such principle of law, it cites the cases of *McKinley* v. *City of Chicago,* 369 Ill. 268; *People ex rel. Durante* v. *Burdett,* 283 Ill. 124, and *People ex rel. Sartison* v. *Schmidt,* 281 Ill. 211. The holding in

the *McKinley case* was based solely on sound public policy. The facts were these: Charles F. McKinley was a candidate for the office of judge of the municipal court of Chicago at the election in 1930, in which twelve judges were to be elected, the twelve receiving the highest number of votes cast. George C. McIntyre was declared to be the twelfth candidate elected, and the certificate of election was issued to him. Thereupon McIntyre assumed the duties of the office and performed the same until the results of an election contest showed the returns as canvassed in error and further showed that McKinley was entitled to the position as judge rather than McIntyre. During the period when McIntyre had been discharging his duties, he had been paid by the city his statutory salary. McKinley brought suit against the city of Chicago to recover salary for the period between the time of his election and the time when he assumed office. The city of Chicago pleaded that it had, in good faith, paid the salary to the *de facto* employee, McIntyre. We held that the public policy of this State was such that the payment to the *de facto* employee was justified, and that the plaintiff, McKinley, could not recover. (*People* v. *Burdett,* 283 Ill. 124; *People* v. *Schmidt,* 281 Ill. 211.) In the *McKinley case* we stated, "If the public authorities must pay at their peril whenever a contest is started, then any candidate, even though hopelessly defeated, might throw the entire judicial machinery into disorder by merely starting a contest. Such a rule would require the city and its various disbursing officers to become insurers of the result of an election with which they had nothing to do, or else withhold all salaries until the cumbersome machinery of an election contest could be put in motion and the contest carried through to its conclusion."

When applied to similar situations, we adhere to the rule announced above. We are dealing here, however,

with a factual situation entirely different. The rule in the *McKinley case* was based on the impropriety and lack of public good, in requiring the city, at its risk, to determine which of two or more claimants in a disputed election was the legally elected and qualified individual. In the instant case, the administrative officials of the city of Chicago are not required to pass upon questions which are legal or *quasi*-legal in nature, nor are they required at their peril to decide between disputing claimants. Here, the question of whether the appellees were entitled to be certified and appointed to civil service positions had been judicially determined by a court of competent jurisdiction after a full and complete hearing on the question. After the circuit court of Cook county, in the original *mandamus* proceedings, had rendered its decree, the only uncertainty present was that in the minds of the city officials that the circuit court's judgment was wrong.

The appellant herein contends earnestly that the decision of the Appellate Court deprives the city of its right to appeal. We fail to see the force of this argument. Rather it seems that the decision which is herein sought to be reversed deprives the city of its right to appeal at the expense of the successful plaintiffs in the *mandamus* proceeding. To uphold the contention of the appellant in this case would be to permit administrative officials of a city to set aside at will for a considerable period, depending upon the time consumed in an appeal, the determination of a court of competent jurisdiction. We know of no other situation where a city, or any other unsuccessful litigant, can claim immunity from the decree of a court during the time required for an appeal. We see no sound reason in public policy or otherwise for extending to a municipality this special immunity.

The city further contends that because of the fact that civil service positions were involved in this case, if the

decree of the trial court in the *mandamus* proceeding was followed, an appeal would be of no value because, by the time the appeal had been perfected, the particular litigants would have become permanent employees under the civil service and, regardless of the outcome of the appeal, could not be removed. With this we cannot agree because if we assume that on appeal the decision favored the city, the result of such a holding would be a determination that the plaintiffs were never entitled to civil service status. In addition thereto, during the period here in question, that is, from February 24, 1941, to July 1, 1942, it is evident from the pleadings that some person or persons were discharging the civil service duties to which the appellees in this case were entitled by law. The record is silent as to what became of the *de facto* incumbents' civil service positions arising out of services performed between February 24, 1941, and July 1, 1942, but we fail to see, as far as any acquisition of civil service status is concerned, any distinction between the *de facto* incumbents and the *de jure* incumbents.

In reaching the conclusion which we do in this case, we are not unmindful of the rule in Illinois that, under certain circumstances, payment of salary to a *de facto* employee, made in good faith by a municipality, constitutes an adequate defense against a claim for salary for the same services made by the *de jure* employee. (*McKinley* v. *City of Chicago*, 369 Ill. 268, and the line of cases preceding it.) However, it must be remembered that in every one of these cases there has been the element of uncertainty as to the legal correctness of the claimant's position. We have discovered no case in which a city's payment to *de facto* employees has been justified in the face of a judicial determination of the righteousness of the claimant's position. The basis of the public-policy rule expounded in the *McKinley case* is that the municipal functions should not be embarrassed or hindered by the

necessity of an administrative body determining in advance wherein lies the legal right as between two disputing claimants. This basic factor is not present in the instant case.

Counsel for the appellant concede that the law in this State is well settled that a civil service employee wrongfully removed from his position and thereafter reinstated is entitled to his salary during the period of his illegal removal, regardless of the payment of such salary to a *de facto* employee. It is our opinion that the facts and circumstances of this case closely parallel the case of a civil service employee wrongfully removed from his position. We can see no fundamental difference in law and equity between the legal wrong done to the individual unlawfully removed from his position and the legal wrong done to the individual who, by the action of a city, is prevented from enjoying that which is rightfully his.

We hold, therefore, that the rule which protects a city from the embarrassing necessity of making an insurer's choice between two conflicting claimants does not apply to a situation such as we have here where the rights of the claimant have been judicially determined.

*Judgment affirmed.*