STATE OF INDIANA *v.* CAREY.

[No. 29,874. Filed June 7, 1961.]

*Edwin K. Steers*, Attorney General, *Richard M. Givan*, Assistant Attorney General, and *Richard C. Johnson*, Deputy Attorney General, and *Gene Williams* Prosecuting Attorney, of Muncie, for appellant.

*Thomas A. Cannon, Frederick F. McClellan*, and *Halligan & Cannon*, all of Muncie, for appellee.

ACHOR, J.—This is an appeal by the State of Indiana from an order of the Delaware Circuit Court quashing an indictment charging James Carey, Chief of Police

of the City of Muncie, appellee herein, for malfeasance, failure and neglect of duty.

The prosecution herein was instituted pursuant to Acts 1905, ch. 129, §240, p. 219, being §48-1304, Burns' 1950 Repl., which reads as follows:

"In case the mayor or *other officer* of any city or town shall wilfully ·or corruptly be guilty of oppression, malconduct or misfeasance in the discharge of the duties of his office, he shall be liable to be prosecuted by indictment or affidavit in any court of competent jurisdiction, and, on conviction, shall be fined not exceeding one thousand dollars [$1,000], and the court in which such conviction shall be had shall enter an order removing him from office." (Our italics.)

The only issue presented to this court under the above record, and argued by the parties, is the question as to whether the appellee, the chief of police, was an "officer" of the city of Muncie within the terms of the foregoing statute, and therefore subject to its penal provisions.

Appellee's position that the chief of police of the city of Muncie is not an officer of the city, is supported by argument, first, that the decisions of this court, which have held that members of the police department, generally, are not officers of the city, are controlling since, "except for rank, a police chief stands on the same footing as any other police officer." In support of this position, the following cases have been cited: *City of Huntington* v. *Fisher* (1942), 220 Ind. 83, 40 N. E. 2d 699; *City of Evansville* v. *Maddox* (1940), 217 Ind. 39, 25 N. E. 2d 321, and *Roth* v. *State, ex rel.* (1902), 158 Ind. 242, 63 N. E. 460.

In the City of Huntington case, *supra*, this court held that an employer-employee relationship existed between

the city and its firemen and policemen, with respect to the application of the workmen's compensation law, notwithstanding the fact that pension systems had been established by law for the benefit of firemen and policemen.

In the City of Evansville case, *supra*, this court held that the proceedings in mandate was not the proper proceedings for the recovery of wages due a policewoman who was wrongfully discharged by the board of public safety. In that case, this court held that within the purview of the statute which authorized mandate proceedings against the city for the wrongful withholding of the salary of the mayor, city clerk, or other officer, a member of the police department was not such an officer and that her remedy against the city was for breach of contract.

In the Roth case, *supra*, this court held that the provisions of the Indianapolis charter, which provides that members of the police force shall hold office for an indefinite period, subject only to the right of removal for cause, does not violate the provisions of Art. 15, §2 of the Constitution of Indiana, which provides that "the General Assembly shall not create any office, the tenure of which shall be longer than four years." In that case, this court determined that the above constitutional provision was not intended to apply to policemen as a class of municipal employees.

In considering the above cited cases, it must be noted, first, that the question in each case involved the tenure or financial relationship between the city and the members of the police and fire departments. None of the cases involved any question as to the criminal responsibility of such persons to the public generally as represented by the state for their failure to perform their duties to the public according to the oath to which each

member of the departments subscribed as a condition to the investiture upon him of a certain portion of the sovereign authority of the state. See *Gaughan* v. *State* (1918), 187 Ind. 334, 118 N. E. 565. Secondly, the cases relied upon in support of appellee's position do not presume to consider the distinction between the position of the chief of police and members of the police department generally. It is upon this distinction that the decision of the court is made to rest.

Furthermore, appellee argues that, because of the fact that §48-6105, Burns' 1950 Repl. provides for the removal or downgrading of members of the fire and police forces by the board of public safety because of their conviction of any crime, or because of their malfeasance or misconduct or neglect of duty, this fact should be considered as demonstrating a legislative intention that such members of the fire and police forces should not be subject to criminal provisions of the statute herein relied upon [§48-1304, *supra*], but that action against them be limited to the civil remedy provided by §48-6105, *supra*.

We do not concur in the preceding argument of the appellee. The "legislative intention," which appellee asserts, is not expressed in nor can it be inferred from the statute; nor are we aware of any general public policy that a municipal officer should be immune from criminal prosecution for his willful and unlawful misconduct in his official capacity, even though as an employee of the city his continued status as an employee is, by statute, made subject to the exclusive determination of an administrative board subject to appeal.

It is sufficient to a decision in this case that we give consideration to the acts of the legislature and the decisions of this court which have consistently asserted that

the chief of police of a city is an *officer* of such municipality, even to the point of recognizing the distinction between the chief of police and other members of the police department in their official capacity.

First, we shall consider the legislative intent, with regard to the official position of the chief of police. We note first that the act, under which the appellee was appointed [Acts 1943, ch. 99, §1, p. 299 (being §48-1215, Burns' 1950 Repl.)], provides that "the mayor shall appoint a city controller, a city civil engineer, a city attorney, a chief of fire department, *a chief of police,* and all other *officers, . . .*" (Our italics.) This provision would seem to demonstrate a clear intent on the part of the legislature that the *officers* specifically enumerated, including the chief of police, be given a position and stature of public officials subject to the will and the term of the office of mayor. In other instances, the legislature has clearly expressed its intention, with regard to the authority of the chief of police, as contrasted with other members of the police department, by providing as follows: "The chief of police shall have exclusive direction and control of the police force, . . ." [§48-6102]. The legislative intent is to be noted by the fact that the legislature, in referring to the chief of police as contrasted with other members of the police department, has consistently described the latter as "policemen" [§48-6151a, Burns' 1950 Repl. (1960 Supp.)], or as "members of the police force [§48-6119, Burns' 1950 Repl. and §48-6144 (1960 Supp.)], or as a "person holding any position on such . . . police forces, . . ." [§48-6113], or as "any member of such police force, . . ." [§48-6112]. However, in discussing the *chief of police,* the legislature has consistently made reference to the *"office"* of such official. In fact, §48-6107, which deals with the powers of policemen, by express language

recognizes the distinction between officers and members of the police force by providing that "The *officers and members of the police force* of every city shall possess all the common-law and statutory powers. . . ." (Our italics.) Further, §48-1502 (1960 Supp.) provides:

"It shall be the duty of the mayor:

. . . . .

"Seventh. To appoint the heads of departments, as hereinafter created, in cities of the first, second, third and fourth classes, and to appoint, in cities of the fifth class, a city marshal, chief of the fire force and street commissioner, all of which appointees shall hold *office* until their successors are appointed and qualified; and he shall make such other appointments as may be provided by law or by the ordinances of any city: Provided, That the mayor may, at any time, suspend or remove from *office* any or all of such heads of departments or other persons, whether appointed by him or by any of his predecessors, by notifying them to that effect and sending a message to the council stating in writing his reasons for such removal." (Our italics.)

Also, it is to be noted that, after §48-6152, which fixes the minimum annual salaries for the chiefs of police, §48-6152a provides that the foregoing section shall not apply under circumstances "wherein the chief of police or the chief of the fire department are not required to devote their full time to the performance of the duties of their respective *offices*. . . ." (Our italics.) And §48-6152b further characterizes the offices of said officials by providing:

"No section of this act [§§48-6152—48-6152b] shall be construed or interpreted as creating the *offices* of chief of police or chief of the fire department in any city wherein there does not now exist a chief of police or chief of the fire department but the provisions of this act [§§48-6152—48-6152b] shall apply in such cities when and if such

*offices* of chief of police and chief of the fire department are created." (Our italics.)

These and similar sections of the statute clearly demonstrate a clear and consistent legislative intent, that the chief of police is a public officer, distinct from that of other members of the police force generally.[1]

Furthermore, an analysis of the decisions of this court demonstrates this distinction which has placed the chief of police in an official position, separate and distinct from other members of the force or department generally.

In the case of *Coleman* v. *City of Gary* (1942), 220 Ind. 446, 461, 44 N. E. 2d 101, this court stated: "The chief of police is simply an *officer* of the city, acting for, and subject to the control of, the city." (Our italics.)

Furthermore, a most persuasive case in support of the position of the state is that of *Klink* v. *State ex rel. Budd* (1935), 207 Ind. 628, 194 N. E. 352. In that case this court held that a commissioner (member) of the board of public safety, who is not an elected official but an officer appointed by the mayor under the authority of §§48-1502, *supra,* and 48-6101, was a public official. By analogy a chief of police appointed by the mayor is a public official. In the Klink case, *supra,* this court also held that since his tenure in office was subject to the will and therefore the four-year tenure of the mayor, such decision did not conflict with the case of *Roth* v. *State,*

---

1. By special statute, in the city of Gary members of the police department are appointed by a civil service commission and may be removed by such commission for cause. However, it is provided under Acts 1957, ch. 161, §3, p. 328 [§48-6252(d), Burns' 1950 Repl. (1960 Supp.)] that: "the mayor of such city shall have the sole power of appointing and removing any member of the department as *chief of the department*: . . ." (Our italics.)

*supra* (158 Ind. 242), which held that a policeman was not a public officer, as contemplated by Art. 15, §2 of the Indiana Constitution.

Within the reasoning of the Roth case, *supra,* and subsequent cases, the chief of police, who is appointed by the mayor and may be removed by him at his pleasure, is a public officer, in that he is the head of a department of government, vested with the sovereign authority of the state and over which he has full responsibility. His position possesses all the criteria of a public official as uniformly recognized by other jurisdictions.[2]

For the reason above stated, the trial court is ordered to vacate and set aside its order discharging the appellee and quashing the indictment herein and to proceed further in this cause in a manner consistent with this opinion.

Landis, C. J., Arterburn and Bobbitt, JJ., concur.

Jackson, J., dissents.

NOTE.—Reported in 175 N. E. 2d 354.

---

2. The criteria for distinguishing between officers and employees of a city are pointed out in Annotations in 53 A. L. R. 595 (1928), 93 A. L. R. 333 (1934), 140 A. L. R. 1076 (1942), 156 A. L. R. 1357 (1945). *See: Rhyne, Municipal Law,* §8-2 at 116-19 (1957).